## Glenwood-Progressive Building and Loan Association Case.

250

Argued October 26, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Sylvan H. Hirsch,* with him *Herbert P. Sundheim,* Special Deputy Attorneys General, and *Charles J. Margiotti,* Attorney General, for appellants.

*Charles G. Gartling,* for appellees.

OPINION BY BALDRIGE, J., December 17, 1937:

Exceptions were filed by Frank J. Britt and Gertrude, his wife, to the first and partial account of Luther A. Harr, Secretary of Banking of the Commonwealth of Pennsylvania, receiver in possession of the Glenwood-Progressive Building and Loan Association.

The Britts, stockholders in the Balkan Building and Loan Association, gave notices of withdrawal in April, 1929, which were followed by second notices on July 6, 1929. On April 17, 1930, the association, without making any payment on these withdrawals, merged with another association to form the Glenwood-Progressive Building and Loan Association. On September 30, 1935, it was taken possession of by the Secretary of Banking for purposes of liquidation.

At the time the notices of withdrawal were given to the Balkan Building and Loan Association, and when they became effective, the association was solvent. The judge found in his adjudication that it was admitted at the audit of the receiver's account that the withdrawal value of the stock of each of the Britts at the time of the merger was $300.50, the amount they seek to recover, and that they took no part in the merger.

In the account of the secretary of banking, the Britts were listed as stockholders. They claim they were not stockholders, but creditors. The court below sustained the exception, holding that they were preferred to shareholders of the merged association and entitled to share pari passu with the general creditors. Two appeals were taken, one by Herbert Jones et al., shareholders of the merged association, and the other by the secretary of banking as receiver of the merged association. They were argued together, and will be disposed of in one opinion.

The appellants' principal contentions are (1) that

the appellees, failing to enforce their claim within six months after the effective date of the Act approved May 15, 1933, P. L. 794, lost the right to recover as general creditors, and have the status of stockholders in the merged association; (2) that under the Department of Banking Code of May 15, 1933, P. L. 565, as amended by the Act of July 2, 1935, P. L. 525 (71 PS §733), all shareholders, whether withdrawing, non-assenting or dissenting, share equally in the distribution of the assets in the receiver's hands.

The Act of May 15, 1933, P. L. 794, §1 (15 PS §426) provides:

"Where a building and loan association has, or shall become, a party to an agreement of merger and consolidation prior to the third day of July, one thousand nine hundred and thirty-three, any shareholder of such association, who has voted against, or who has not voted for or against, such merger and consolidation at the meeting of shareholders at which the merger and consolidation was adopted, shall be forever barred from exercising any rights which he shall have as a non-assenting or as a dissenting shareholder, whether at law or in equity unless he shall commence, or shall have proceedings, at law or in equity, to enforce such rights either within six months after the effective date of his act, or within six months after the date upon which the merger and consolidation has, or shall become effective."

The obvious purpose of this statute is to compel non-assenting or dissenting shareholders to declare their position within a period prescribed by the act, so that the liabilities of the merged associations may be ascertained within a reasonable time, instead of permitting an uncertainty to exist until the general statute of limitations has run. A nonassenting or dissenting shareholder, failing to act within six months, is conclusively presumed to acquiesce in the consolidation:

*Gorges v. Greater Adelphi B. & L. Assn.* 322 Pa. 569, 574, 185 A. 815.

Our appellate courts have not been called upon to decide whether the provisions of this act affect the rights of a withdrawing stockholder whose notice became effective before the date of the merger. It would seem that if withdrawing stockholders had been within the contemplation of the lawmakers, they would have been expressly mentioned. It must be assumed that the legislature knew that the courts have recognized for a long time the distinction between a withdrawing stockholder and a dissenting or nonassenting stockholder. As the liability of constituent and consolidated associations to a withdrawing stockholder is known, there is no need to compel him to declare himself by either an assent or dissent to a merger. His intentional withdrawal obviates any further action to establish his standing.

The appellees, originally stockholders in a solvent association which was subsequently merged with a new association, never were stockholders in the latter. Upon their withdrawal notices maturing, they ceased to be stockholders in the constituent association. They then became creditors, with the right to pursue their remedies against either the old association, from which they had withdrawn, or the new association. They were not entitled as stockholders to any further profits or voice in the management of the association. They acquired rights as creditors, which were fixed and stationary: *Weinroth, Exrx. v. Homer B. & L. Assn.*, 310 Pa. 265, 165 A. 28; *Oechsle et ux. v. Lodge B. & L. Assn.*, 119 Pa. Superior Ct. 597, 181 A. 375.

The appellants argue that the merger rendered nugatory the withdrawal notices given nine months previous thereto, relying upon *Nice Ball Bearing Co. v. Mortgage B. & L. Assn.*, 310 Pa. 560, 166 A. 239. There, however, the thirty-day period following the withdrawal

notice, required under the Act of April 29, 1874, P. L. 73, §37, cl. 2 (15 PS §991), had not yet expired at the time of the merger, and, therefore, that case does not support the broad proposition that a merger renders ineffective unpaid withdrawals.

Concluding, as we do, that the Act of 1933, supra, by its terms, is expressly limited to dissenting or non-assenting shareholders, and not to withdrawing shareholders of a constituent association, the appellees' claims are within the general statute of limitations: *Oechsle et ux. v. Lodge B. & L. Assn.*, supra.

The appellants, in support of their second proposition, invoke the provisions of the Department of Banking Code of 1933, as amended, supra, §1011-B-C (71 PS §733-1011). They set forth the order of preference to be followed in the distribution of assets of a building and loan association in possession of the secretary of banking, viz:

B. First. Expenditures made by the receiver.

Second. Certain fees or debts incurred prior to taking of possession by the secretary, etc.

Third. Any claim of a creditor of the association, other than the claim of a shareholder arising from his ownership of shares.

Fourth. Shareholders shall be paid ratably, whether such shares be full paid, prepaid, matured, or any other type, and whether or not notice of withdrawal of such shares has been given to the association.

"C. Every claim enumerated above shall have the same rank and priority as every other claim in the same numbered paragraph, regardless of the order in which such claims are enumerated."

See *Weinroth, Exrx. v. Homer B. & L. Assn.*, supra; *Nice Ball Bearing Co. v. Mortgage B. & L. Assn.*, supra; *Hall v. Greater Adelphi B. & L. Assn.*, 113 Pa. Superior Ct. 14, 171 A. 427, for a discussion of the order of distribution of assets of insolvent associations.

We think this act, which is in derogation of the

common law, must be strictly construed. We have already shown that a stockholder, whose notice of withdrawal has matured in a constituent association prior to the merger, and before the association is taken over by the secretary of banking, has the status of a creditor —and the act applies only to stockholders. Furthermore, the Act of 1933, P. L. 565, supra, art. I, §13-B (71 PS §733-13), provides:

"The provisions of this act shall not affect any act done, liability incurred, or right accrued, or any suit or prosecution pending or to be instituted to enforce any right or penalty or to punish any offense under the authority of any act repealed or superseded by this act."

Under this saving clause, the claimants' rights as creditors had accrued prior to the merger in 1930.

The appellants raised questions, which we think are subordinate to the main issues, but we will briefly consider them.

The first is, that payments were made to the association on February 18, 1930, which was subsequent to the filing of their notices of withdrawal, and that this action amounted to a rescission of their notices. This question was apparently not raised in the lower court, and therefore is not entitled to a consideration by an appellate court: *McLaughlin et ux. v. Monaghan,* 290 Pa. 74, 138 A. 79. Evidently, it was undisputed there that claimants' withdrawal notices became effective in August, 1929. We might state, however, that there was no proof offered that the claimants themselves made payments to the Balkan Building and Loan Association after their notices of withdrawal had become effective.

The appellants' contention in the court below was confined to the proposition that the appellees were shareholders because they neither assented nor dissented to the merger, and there was no evidence that any payment that may have been made was for the

purpose of cancelling the prior withdrawal notices of the appellees. Moreover, payments, after filing of withdrawal notices, do not necessarily indicate a cancellation of the notices: *Benjamin Podol B. & L. Assn. et al. v. Polak,* 102 Pa. Superior Ct. 36, 156 A. 556.

The appellants further assert that the appellees failed to prove that their respective turns for payment were reached prior to the merger. Here, again, that question was not raised in the court below, nor is it included in the statement of questions involved. This contention is without merit, as the appellees were claiming as creditors, not as shareholders, to participate in the distribution of funds in a receiver's hands derived from the liquidation of an association. It, therefore, was not necessary for them to allege and prove that their turn had been reached, or that the funds by law applicable to the demands of the withdrawing shareholders were sufficient to meet and liquidate their claims against the Balkan Building and Loan Association.

In the case of *Gorges v. Greater Adelphi B. & L. Assn.,* supra, the statement of claim was not clear whether plaintiff sued as a withdrawing or dissenting stockholder. In disposing of the case on appeal, it was determined he was a dissenting stockholder. In neither that case nor *Brown v. Victor B. & L. Assn.,* 302 Pa. 254, 153 A. 349, was there a distribution of assets arising from the liquidation of an association by the banking department. We do not regard the line of cases of which those cited are examples applicable to the facts before us.

No facts are presented in this record from which it can be ascertained whether the allowance of the appellees' claims will prejudice general creditors of either the constituent or consolidated association. It may be that the assets are sufficient to pay all such creditors in full. These claims, having their origin by virtue

of the appellees formerly being shareholders in the Balkan association, are not entitled, however, to share pari passu with any general creditors.

A careful consideration of this case convinces us that the court was correct in holding that the appellees were creditors and not stockholders of the consolidated association, and were entitled to participate in the funds for distribution. But, in the event of there being any creditors with superior rights, they are preferred to appellees. With this observation, we see no reason to disturb the action of the learned court below.

Decree in each appeal is affirmed, at the cost of appellants.